**Ex parte Victor CARILLO.**

Nos. 69385–69387.

Court of Criminal Appeals of Texas, En Banc.

March 6, 1985.

Rehearing Denied April 17, 1985.

John D. Reeves, Huntsville, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

This is a post-conviction habeas corpus proceeding under Art. 11.07, V.A.C.C.P. See *Ex Parte Young*, 418 S.W.2d 824 (Tex. Cr.App.1967).

The facts show applicant appeared before the trial court on September 8, 1980, and entered pleas of guilty to two charges of aggravated robbery in Palo Pinto County in trial court Cause Nos. 7656A and 7658A and received two (2) concurrent life sentences for same, and that on September 12, 1980, he received a life sentence for aggravated robbery in Parker County in trial court Cause No. 8550, to run concurrent with the two Palo Pinto causes. In exchange for pleas of guilty, the prosecutors in both counties agreed to recommend to the respective trial courts that the sentences run concurrently; that additional charges in Texas and New Mexico be dropped, and that life terms be assessed. After accepting applicant's pleas of guilty, the plea bargain agreements were submitted to and approved by the respective trial courts.

Applicant now contends that he is "illegally confined and restrained of his liberty because his pleas of guilty were not freely, knowingly, and voluntarily entered in that his attorney advised him that his initial parole eligibility date on a life sentence would be twelve years hence, and applicant pled guilty believing his initial parole eligibility would be reached in twelve years—." He contends that this advice was erroneous; that he relied on it to his detriment, and that, ergo, his pleas of guilty were involuntary.

Additionally, applicant contends he was denied the effective assistance of counsel in that his counsel failed to investigate the law as it applied to parole.

This cause was abated to the respective trial courts and an evidentiary hearing was conducted in Palo Pinto County on April 18, 1984, and in Parker County on June 26, 1984, with all parties present.

At both evidentiary hearings, applicant testified that his attorney advised him prior to the pleas that he (the applicant) would be eligible for parole in seven (7) to twelve (12) years; that he relied upon this advise in deciding whether to plead guilty, and that he discovered, after being incarcerated at the Texas Department of Corrections, that he would not be eligible for parole until the expiration of twenty (20) calendar years.

The prosecuting attorneys for the respective counties take the position that the only

inducements offered to applicant to obtain his plea were the agreement to dismiss other pending indictments and the promise to recommend that the three life terms would run concurrently. Insofar as the respective prosecuting attorneys and trial judges are concerned, such is a fair and accurate representation of the events that transpired.

Upon direct examination at the Palo Pinto County hearing, applicant's trial attorney was questioned with regard to advice given to the applicant on the subject of parole. Trial counsel testified that he advised applicant that he would "probably be considered for parole in approximately twelve years," and when asked by appellate counsel if he was aware of the provision in Art. 42.12, Sec. 15(b), V.A.C.C.P., trial counsel replied, in pertinent part: "I was not aware of the twenty year flat requirement under that particular statute."

Additionally, the record contains a letter dated July 16, 1981, from trial counsel to applicant, advising applicant that he (applicant) could expect to serve twelve years, and perhaps even less, with "trusty time and other credits."

Applicant testified that he became concerned about his parole situation when he was told by an employee of the Board of Pardons and Paroles that parole would not be a consideration until twenty calendar years had been served. He then wrote a letter to his trial counsel and received the reply of July 16, 1981, documented ante. Applicant testified that he then consulted with a member of the Staff Counsel for Inmates. Staff counsel David Payne then contacted trial counsel by letter, and subsequently received a letter, contained in the record, from trial counsel dated December 15, 1983, substantially confirming the advice given to applicant in the July 16th letter. Finally, applicant testified that, but for the advice of counsel concerning parole, he would not have entered guilty pleas.

Applicant relies on this Court's opinion in *Ex Parte Young,* 644 S.W.2d 3 (Tex.Cr. App.1983), wherein we held, inter alia, that "if the defendant is grossly misinformed about his parole eligibility date by his attorney, and *the defendant relies upon that misinformation to the extent that it induces him to plead guilty or nolo contendere, his plea may be rendered involuntary."* at pg. 5 [emphasis added] We find the facts in the instant case to be inapposite to those illuminated in *Ex Parte Young, supra,* hereinafter called Young.

In *Young,* trial counsel advised the defendant that, if there were a negative finding of the use of a deadly weapon, the defendant would only serve three years of a fifteen year sentence, when in truth and in fact, the defendant would have to serve a minimum of five years calendar time. See Art. 42.12, Sec. 15(b), supra. As pointed out in the opinion, the "trial court also labored under this misunderstanding of the law in that he followed the 'plea bargain' to *not* enter an affirmative finding that a deadly weapon was used." at pg. 4 [emphasis in original]. Thus in *Young,* the agreement was made a part of the plea bargain and sanctioned by the trial court. Additionally, the trial judge made findings of fact and conclusions of law, recommending that relief be granted. Thus there was no disputed fact issue to be resolved in *Young.*

In the instant case, we observe that the subject of parole was expressly discussed with appellant during his guilty plea in Parker County in trial court Cause No. 8550. The following colloquy occurred between the appellant and the trial judge therein:

"THE COURT: Have you been influenced to make your plea by any consideration of fear of any persuasion or delusive hope you might receive a pardon or *parole?*

"THE DEFENDANT: No, sir.

"...

"THE COURT: Has anybody told you anything about what you could expect in the way of being eligible for parole on a Life sentence or anything like that?

"THE DEFENDANT: No, sir, but I'm aware of it.

"THE COURT: You've been down before?

"THE DEFENDANT: Yes, sir.

"THE COURT: How many times?

"THE DEFENDANT: Once sir.

"THE COURT: You realize that most likely—I don't know what the Board of Pardons and Paroles does, but if you've got three offenses, and you've been down before, you're not going to be a very good candidate for parole anytime in the foreseeable future? You understand that?

"THE DEFENDANT: Yes, sir."

The trial judge in Parker County subsequently entered findings of fact and conclusions of law, stating, inter alia, that "The petitioner's plea of guilty was voluntary and was not based on any advice or information given to the petitioner by anyone regarding his possible parole eligibility date." The trial judge in Palo Pinto County entered very similar findings in trial court Cause Nos. 7656A and 7658A.

■ It is axiomatic that a trial court may not accept a plea of guilty or nolo contendere in any felony case unless it appears that the plea is free and voluntary. Art. 26.13(b), V.A.C.C.P. provides:

"No plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary."

In the instant case, unlike the *Young* case, there is presented a disputed issue of fact to be resolved. Both trial judges resolved this issue adversely to the applicant, and found that applicant's pleas of guilty were made freely, knowingly and voluntarily, and further found that, if there was any inducement for the pleas, it was the dismissal of additional charges and the concurrent running of the three sentences, both of which have been fulfilled. We agree and find that the pleas were entered freely, voluntarily and knowingly. See Art. 26.13(b), supra.

Turning to applicant's ineffective assistance of counsel claim, the primary support for such a claim is found in trial counsel's testimony that he "misinterpreted the statute," and in the two letters mentioned ante. Trial counsel testified that he informed applicant that he would be eligible for parole in *around* twelve years prior to the pleas of guilty. This is consistent with trial counsel's letter of July 16, 1981, wherein trial counsel additionally advised applicant that the "best information on this could be secured from the Board of Pardon [sic] and Paroles, in Huntsville, Texas."

We further observe, in assaying the ineffective assistance claim, that trial counsel succeeding in getting several other aggravated robbery indictments against applicant dismissed; in getting a felony escape charge from the State of New Mexico dismissed; and getting the three sentences to run concurrently. We additionally note that, in one of the robberies committed by applicant, the victim was seriously wounded by applicant.

■ The standard to be used in determining the performance of counsel is well explicated by Presiding Judge Onion in *Mercado v. State*, 615 S.W.2d 225 (Tex.Cr. App.1981):

"In *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Cr.App.1980), this court, relying on *Cuyler v. Sullivan* [446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) ] supra, held that the effectiveness of both appointed and retained counsel are now to be judged by a single standard under the Sixth Amendment which is that of the 'reasonably effective assistance of counsel,' formerly applied only to appointed counsel cases. The 'breach of a legal duty standard,' formerly applied in retained counsel cases, [citations omitted] is gone with the wind. [citations omitted].

"The 'reasonably effective assistance' standard came from *MacKenna v. Ellis*, 280 F.2d 592, 599 (5th Cir.1960), cert. den., 368 U.S. 887, 82 S.Ct. 121, 7 L.Ed.2d 78. In *MacKenna*, the court said:

" 'We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless

counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance.' See also *Herring v. Estelle*, 491 F.2d 125 (5th Cir.1974).

"This court has previously applied this standard in appointed counsel cases. See *Ex parte Gallegos*, 511 S.W.2d 510 (Tex. Cr.App.1974), and cases there cited. See also *Harrison v. State*, 552 S.W.2d 151, 152 (Tex.Cr.App.1977).

"In determining whether an accused has been denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution, the particular circumstances of each individual case must be considered. *Avery v. Alabama*, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1939); *Ex parte Gallegos*, supra; *Ex parte Prior*, 540 S.W.2d 723, 726 (Tex. Cr.App.1976).

"The adequacy of an attorney's services must be gauged by the totality of the representation. *Ex parte Prior*, supra; *Williams v. State*, 513 S.W.2d 54 (Tex. Cr.App.1974); *Satillan v. State*, 470 S.W.2d 677 (Tex.Cr.App.1971). The allegations of ineffective representation will be sustained only if they are firmly founded. *Faz v. State*, 510 S.W.2d 922 (Tex.Cr.App.1974); *Long v. State*, 502 S.W.2d 139 (Tex.Cr.App.1973).

"The constitutional right to counsel, whether counsel is appointed or retained, does not mean errorless counsel or whose competency of adequacy of his representation is to be judged by hindsight. *Ex parte Prior*, supra; *Byrd v. State*, 421 S.W.2d 915 (Tex.Cr.App.1967); *Duran v. State*, 505 S.W.2d 863 (Tex.Cr. App.1974); *Pete v. State*, 501 S.W.2d 683 (Tex.Cr.App.1973)." at pg. 228.

■ We believe that the facts in the instant case present a far different picture from those in Young. Trial counsel in the instant case did not promise applicant that he would definitely serve only twelve years, and in fact told applicant to consult with the appropriate authority to ascertain such information. We believe that the totality of the circumstances of the case and the totality of the representation rendered by trial counsel was more than adequate under the guidelines explicated in *Mercado*, supra.

The relief prayed for is denied.

CLINTON, J., concurs in this opinion.

TEAGUE, J., dissents.

MILLER, Judge, concurring.

I agree that the facts of this case do not meet the test of ineffective assistance of counsel. As pointed out in *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), except in cases involving presumed prejudice the defendant has the burden of proof to show not only that counsel committed an unprofessional error, but that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." The reasonable probability test falls between the "some conceivable effect on the outcome" and the "more likely than not altered the outcome" tests. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Strickland*, supra. This test should, according to *Strickland*, be used in collateral proceedings and habeas proceedings as well as in direct appeals.

Given this standard, the question in this case is whether there is a reasonable probability that but for counsel's incorrect advice concerning appellant's eligibility for parole, the appellant would not have accepted the plea bargain and pled guilty under the facts of this case. Since we must consider the totality of circumstances, we should look at least at the efforts of appellant's counsel narrated in the majority opinion and the aggravating facts of one of the offenses (run concurrently with the others). Balancing these facts against the bad advice is enough to overcome appellant's challenge, in part because the advice involved eligibility for parole and not the promise of parole itself.

Parole is very much a speculative proposition. Its happening is contingent on many factors unknown and nonexistent at the time of a guilty plea. Factors such as the conduct of appellant in prison, the composition and attitude of the parole board, the population of the prison system, the identity and attitude of the governor, the regulations governing "good time," etc., all are yet to be when the defendant decides to plead guilty. The erroneous advise from counsel about the time frame of parole eligibility is then about an event, parole, whose time of occurrence, if any, cannot even be accurately guessed at. It should not be accorded sufficient importance as to outweigh the other factors considered in this case.

All in all, appellant has failed in his burden to prove there is a reasonable probability that but for the erroneous advise, he would not have pled guilty. For these additional reasons, I join the opinion of the majority.