TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00161-CR







Gerardo Leyva, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT


NO. 97-832-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING







 A jury convicted Gerardo Leyva of aggravated sexual assault and assessed
punishment at seventy-five years in prison. Tex. Penal Code Ann. § 22.021 (West Supp. 1999). 
He contends on appeal that the district court erred by not dismissing the indictment and by
admitting his written statement. He also contends that insufficient evidence supports the verdict
and that his counsel was ineffective. We will affirm the judgment.

 We initially will summarize the evidence, reserving a more extensive review for
our discussion of the sufficiency of the evidence. The victim testified that she was in her apartment
trying on clothes when an unknown male assailant put a blanket over her head, threw her to the
floor, threatened her, and raped her. Police responding to a neighbor's call chased the assailant. 
Police later captured Leyva. His appearance at the time and items later found in his pockets
connected him to the assault.

 Leyva contends that the indictment was defective because the grand jury heard only
from the assistant district attorney. He argues that this falls far short of the statutory directive that
the grand jury vote "[a]fter all the testimony which is accessible to the grand jury shall have been
given in respect to any criminal accusation." See Tex. Code Crim. Proc. Ann. art. 20.19 (West
1977). The code does not require, however, that all available or possible evidence be presented. 
 Nor does it require trial courts or appellate courts to examine whether sufficient evidence supports
an indictment. Like the court of criminal appeals, "We decline to open the door to the
interminable delays which would undoubtedly result without any reasonable expectation of adding
to the assurance of a fair trial by allowing defendants to inquire into an indictment valid on its face
returned by a legally constituted and unbiased grand jury." Carpenter v. State, 477 S.W.2d 22,
23 (Tex. Crim. App. 1972); see also State v. Rosenbaum, 910 S.W.2d 934, 947 (Tex. Crim. App.
1994). Leyva does not challenge the composition or neutrality of the grand jury. The lack of live
witnesses does not compel us to conclude that the indictment is defective.

 Leyva next complains that his written statement was admitted erroneously. He
wrote the statement in Spanish (his preferred language) before being taken to a magistrate. He
complains that the police took his statement before having a magistrate advise him of his rights,
violating Texas Code of Criminal Procedure article 38.22, section 2, and rendering the statement
inadmissible. That section provides, however, that the statement can be admissible if the person
taking the statement advises the defendant of his rights and the defendant waives those rights. See
id. Evidence showed that police read Leyva his rights in Spanish before Leyva gave the statement
and that Leyva initialed each right listed on the face of the statement, indicating he was aware of
and was waiving those rights. Leyva also complains that the person who translated his written
statement into English did not appear in court. The written English translation of the statement
was not admitted into evidence before the jury, however. (1) The only English translation of the
statement presented to the jury came orally without objection during the trial as part of the
investigator's live testimony. The oral translation did not differ appreciably from the text of the
written translation the court saw. The district court did not err by admitting the statement.

 Even if the statement should not have been admitted, we conclude its admission was
harmless because Leyva did not admit to a crime in the statement. He averred that he had
consensual sex with a woman whose screaming caused him to run away. Other witnesses
corroborated the fact of Leyva and the woman having sex, the woman screaming, and Leyva
running. Where Leyva's testimony significantly departs from other witnesses' testimony is in the
indicia of consent; his statement favors his innocence on the consent issue. We conclude beyond
a reasonable doubt that the admission of his statement did not contribute to his conviction. See
Tex. R. App. P. 44.2.

 Leyva contends that the evidence was insufficient to sustain the verdict. To review
the legal sufficiency of the evidence, we view it in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the element beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Griffin v. State, 614 S.W.2d 155, 159 (Tex.
Crim. App. 1981). To review the factual sufficiency of the evidence, we view all the evidence
and set aside the verdict only if it is so against the weight of the evidence as to be clearly unjust. 
Cain v. State, 958 S.W.2d 404, 406-408 (Tex. Crim. App. 1997) (citing Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996)). 

 On appeal, Leyva challenges the proof only of the elements of the offense related
to his identity. The victim's testimony proved all the other elements of aggravated sexual assault
as charged in the indictment, namely that a person intentionally or knowingly penetrated her 
sexual organ with his sexual organ without her consent and placed her in fear of imminent death
or serious bodily injury. The victim said she was in her apartment trying on clothes when an
unknown male assailant put a blanket over her head, threw her to the floor, and put his arm around
her throat. She struggled and screamed until the assailant threatened to stab her if she did not
stop. She noted he had a slight Hispanic accent. He pulled off her pants and penetrated both her
vagina and anus with his penis. She never clearly saw his face.

 Leyva complains that no one saw the attacker's face. The victim testified that she
never saw more than the outline of the attacker's face and the police officers saw only the
attacker's back.

 Leyva's challenge ignores crucial evidence. An officer stood on the ground directly
beneath the victim's balcony and saw a man jump from the balcony. He pursued the fleeing man,
but lost him. Other officers found Leyva on top of the roof of a nearby apartment building; his
clothing was sweat-soaked and his pants were unzipped. A police investigator testified that, four
days after the incident, he went through Leyva's clothing at the police department and discovered
in the pants pocket a perfume bottle and store receipt; the victim identified these as items that were
in her purse in her apartment before the attack. No officer had noted the items before. The
victim testified that her assailant told her that he had been watching her before the attack;
investigation revealed that Leyva lived in an apartment directly across the street from the victim's
apartment. Leyva initially gave a false name to police.

 According to Leyva's written statement, he was walking down the sidewalk when
a naked woman called out to him and invited him into her apartment. They had sex, but the
woman began screaming so he ran away.

 The victim's testimony proved all the elements needed to show that someone
committed an aggravated sexual assault against her. Leyva admitted having sex with a woman in
the apartment. Combined with this evidence, the testimony of the police about their sighting and
chase of a man from the victim's apartment, their apprehension of Leyva, and the items from the
victim's purse found in Leyva's possession provide factually and legally sufficient evidence to
support the conviction.

 Leyva finally contends that his counsel was ineffective. To evaluate this claim, we
first must examine whether counsel's conduct failed to meet an objective standard for reasonable
performance and whether that failure deprived the appellant of a fair trial. See Strickland v.
Washington, 466 U.S. 668, 687, (1984); Ex parte Walker, 777 S.W.2d 427, 430 (Tex. Crim.
App. 1989). Counsel is allowed wide latitude within reasonable professional standards to make
tactical decisions. Strickland, 466 U.S. at 689. We look at the totality of the representation. Ex
parte Carillo, 687 S.W.2d 320, 324 (Tex. Crim. App. 1985); Vasquez v. State, 819 S.W.2d 932,
938 (Tex. App.--Corpus Christi 1991, pet. ref'd). The representation need not be free of error. 
Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984); Vasquez, 819 S.W.2d at 938. 
Finally, the client must show a reasonable probability that, but for counsel's errors, the result of
the proceedings would have been different. Id.

 Leyva contends his counsel was ineffective by failing to present evidence of the
inconclusive nature of the DNA testing and by commenting on the reason for that failure. After
the close of evidence, the following exchange occurred outside the presence of the jury:


[Mr. Leyva]: Yes, I--I did some research and they were supposed to come up
with all the evidence, including the DNA which they took from me
on September 18th, and they failed to come up with that evidence. 
And under the statutes of Maryland versus Brady, they therefore
carry for a mistrial, Your Honor. And also, that my attorney's not
helping me represent my case.


THE COURT: Mr. Davis, [defense counsel,] anything to say?


MR. DAVIS: Yes, Your Honor. In response to this allegation, I will tell you that
the State did provide me with copies of the DNA testing and the
other testing. I believe that Mr. Leyva's misinterpreting those
results. The state is not required--and my understanding of the
law--to come in and put that evidence on. And, you know, we
could certainly put it on. That has not been an issue, whether or not
he had sex with her, based on our conversations.


[Mr. Leyva]: It clearly shows, Your Honor, that it does not have any evidence
against me on the DNA report.


[Prosecutor]: Judge, I'm going to make a statement for the record. That's not
correct. The DNA test did not exclude Mr. Leyva, so that is not
exculpatory information.



The record does not contain either the DNA test results or evidence regarding whether the DNA
test results favored Leyva or were inconclusive. We cannot find counsel's conduct deficient based
on bare, controverted assertions that the results would have favored him. We certainly cannot
find, based on such bare assertions, that the result of the trial probably would have been different
but for the alleged deficiency. Nor do we find the representation ineffective for counsel's
disclosure of the content of his confidential conversations with Leyva. The content of counsel's
"disclosure"--that whether Leyva had sex with the victim was not an issue--was before the jury
through Leyva's written admission that he had sex with her. Even if the disclosure was deficient
performance, it had no effect on the verdict because the jury did not hear it. 

 Having resolved all issues on appeal against Leyva, we affirm the judgment of
conviction.



 

 Lee Yeakel, Justice

Before Justices Jones, B. A. Smith, and Yeakel

Affirmed

Filed: June 17, 1999

Do Not Publish
1. The written English translation was introduced during a hearing outside the presence of
the jury, but not offered to the jury.



ily: CG Times">e
first must examine whether counsel's conduct failed to meet an objec